1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAN WINGER, on behalf of NORA
WINGER, Deceased,

                 Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

                 Defendant.

CASE NO. 12-cv-05360-BHS-JRC

REPORT AND
RECOMMENDATION ON
PLAINTIFF'S COMPLAINT

Noting Date: March 8, 2013

     This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976).  This matter has been fully briefed (*see* ECF Nos. 14, 15, 16).

     After considering and reviewing the record, the Court finds that the ALJ failed to evaluate Ms. Winger's mental impairments properly at step two of the sequential evaluation process.  Additionally, the ALJ failed to provide specific and legitimate

1  reasons for rejecting the medical evidence of treating physician Dr. Christopher Yarter,

2  M.D. when making the residual functional capacity ("RFC") determination.  Because the

3  ALJ failed to evaluate properly the medical evidence, this Court also finds that the ALJ

4  should reevaluate Ms. Winger's testimony, the lay testimony, and the RFC.

5        Therefore, this Court recommends that the matter be reversed and remanded

6  pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration.

7                                    BACKGROUND

8        Plaintiff, DAN WINGER, brings this action on behalf of his deceased wife,

9  NORA L. WINGER, ("Ms. Winger"), who was born in October, 1951 and was 58 years

10 old on her date last insured (Tr. 49).  Ms. Winger graduated from high school, attended

11 two years of college and worked as an instructional assistant, receptionist, client

12 advocate, and information referral specialist (Tr. 49, 182, 206).  She married and had

13 twin boys, one of whom had cerebral palsy (Tr. 62-63, 295).  Ms. Winger was a victim of

14 breast cancer, resulting in a double mastectomy, causing severe lymphedema in her right

15 upper extremity (Tr. 336, 351).  She was issued a disabled parking permit because of a

16 previous knee injury and resulting arthritic condition (Tr. 363).  Her main treating

17 physician, Dr. Christopher Yarter, M.D., had been seeing her since 2004 (*see generally*

18 Tr. 348-63).  He treated her for obesity, hypertension, hypothyroidism, and gout, in

19 addition to her lymphedema and left knee arthritis (Tr. 360, 363).  She also had been

20 diagnosed and treated for a bipolar disorder with recurring episodes of decompensation in

21 response to stress (*see, e.g.*, Tr. 205, 363, 485-90, 533-45).

22

23

24

1

## PROCEDURAL BACKGROUND

2

On November 4, 2008, Ms Winger protectively filed an application for a period of

3

disability and for disability insurance benefits pursuant to Title II of the Social Security

4

Act (*see* Tr. 155-60).  Her application was denied initially and following reconsideration

5

(Tr. 84-85).  Ms. Winger's requested hearing was held before Administrative Law Judge

6

Helen Francine Strong ("the ALJ") on August 10, 2010, followed by a decision on

7

October 28, 2010 finding Ms. Winger not disabled (Tr. 12-29).  In November of 2010,

8

Ms. Winger requested the Appeals Council's review, but died one year later, on

9

November 16, 2011 of breast cancer with liver metastases while her case still was

10

pending (Tr. 175).  On March 8, 2012, the Appeals Council denied Ms. Winger's request

11

for review (Tr. 1, 7), and her husband, Dan Winger, is seeking judicial review on Ms.

12

Winger's behalf.

13

On April 24, 2012, plaintiff filed a complaint in this Court seeking judicial review

14

of the ALJ's October 28, 2010 written decision (*see* ECF No. 1).  Defendant filed the

15

sealed administrative record in this matter ("Tr.") on July 3, 2012 (*see* ECF Nos. 11, 12).

16

In the Opening Brief, plaintiff raises the following issues: (1) whether or not the ALJ

17

improperly rejected medical source opinion; (2) whether or not the ALJ erroneously

18

rejected plaintiff's testimony; (3) whether or not the ALJ improperly rejected lay

19

testimony; (4) whether or not the ALJ made an inadequate step four finding; and (5)

20

whether or not the ALJ failed to meet her burden at step five of the sequential evaluation

21

process (*see* ECF No. 14, pages 1-2).

22

23

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 3

1

<u>STANDARD OF REVIEW</u>

2

Plaintiff bears the burden of proving disability within the meaning of the Social

3

Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on

4

the fifth and final step of the sequential disability evaluation process. *Meanel v. Apfel*,

5

172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432

6

(9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines

7

disability as the "inability to engage in any substantial gainful activity" due to a physical

8

or mental impairment "which can be expected to result in death or which has lasted, or

9

can be expected to last for a continuous period of not less than twelve months." 42 U.S.C.

10

§§ 423(d)(1)(A), 1382c(a)(3)(A).  Ms. Winger was disabled pursuant to the Act only if

11

her impairments were of such severity that she was unable to do previous work, and

12

could not, considering her age, education, and work experience, engage in any other

13

substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A),

14

1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

15

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

16

denial of social security benefits if the ALJ's findings are based on legal error or not

17

supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

18

1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

19

1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

20

such "'relevant evidence as a reasonable mind might accept as adequate to support a

21

conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v.

22

*Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S.

23

24

389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting Andrews, supra*, 53 F.3d at 1039). In addition, the Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. 2012); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 674 F.3d 1104, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-

1  *46; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009); *Stout,*

2  *supra*, 454 F.3d at 1054-55.

3

4  <u>DISCUSSION</u>

5  **1.  Whether or not the ALJ improperly rejected medical source opinions**.

6  Ms. Winger suffered from both physical and mental impairments.  Because the

7  ALJ failed to find that Ms. Winger had any severe mental impairment at step two, the

8  Court first will analyze the medical evidence regarding mental impairments.  Then, the

9  Court will consider the ALJ's evaluation of Ms. Winger's physical impairments that the

10  ALJ found were severe, but not disabling.

11  *a.  Ms. Winger's mental impairment – bipolar disorder.*

12  Although the ALJ recognized that Ms. Winger had been diagnosed with bipolar

13  disorder triggered by stress, she concluded at step two of her sequential analysis that this

14  mental impairment "did not cause more than minimal limitation in the claimant's ability

15  to perform basic work activities and was therefore non severe" (Tr. 18).

16

17  Step-two of the administration's evaluation process requires the ALJ to determine

18  whether or not the claimant "has a medically severe impairment or combination of

19  impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted);

20  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). An impairment is "not severe"

21  if it does not "significantly limit" the ability to conduct basic work activities.  20 C.F.R.

22  §§ 404.1521(a), 416.921(a).  Basic work activities are "abilities and aptitudes necessary

23  to do most jobs," including, for example, "walking, standing, sitting, lifting, pushing,

24

pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting."  20 C.F.R. § 404.1521(b).

"An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'"  *Smolen, supra*, 80 F.3d at 1290 (*quoting Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (*adopting* Social Security Ruling "SSR" 85-28)). According to Social Security Ruling 96-3b, "[a] determination that an individual's impairment(s) is not severe requires a careful evaluation of the medical findings that describe the impairment(s) (*i.e.*, the objective medical evidence and any impairment-related symptoms), and an informed judgment about the limitations and restrictions the impairments(s) and related symptom(s) impose on the individual's physical and mental ability to do basic work activities." SSR 96-3p, 1996 SSR LEXIS 10 at *4-*5 (*citing* SSR 96-7p); *see also Slayman v. Astrue*, 2009 U.S. Dist. LEXIS 125323 at *33-*34 (W.D. Wa. 2009).

Plaintiff bears the burden to establish by a preponderance of the evidence the existence of a severe impairment that prevented performance of substantial gainful activity and that this impairment lasted for at least twelve continuous months.  20 C.F.R. §§ 404.1505(a), 404.1512, 416.905, 416.1453(a), 416.912(a); *Bowen, supra*, 482 U.S. at 146; *see also Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) (*citing Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995)). It is the claimant's burden to "'furnish[] such

medical and other evidence of the existence thereof as the Secretary may require.'"

*Bowen, supra*, 482 U.S. at 146 (*quoting* 42 U.S.C. § 423(d)(5)(A)) (*citing Mathews v. Eldridge*, 424 U.S. 319, 336 (1976)); *see also McCullen v. Apfel*, 2000 U.S. Dist. LEXIS 19994 at *21 (E.D. Penn. 2000) (*citing* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.1505, 404.1520).

Here, the ALJ found that Ms. Winger suffered from bipolar disorder but maintained that this was not a severe impairment because this did not cause more than minimal limitation in her ability to perform basic mental work activities (Tr. 18).  The ALJ came to this conclusion based in large part on the testimony of a reviewing medical expert, Dr. C. Richard Johnson, M.D., who testified at the hearing and found that based on his review of records, Ms. Winger's bipolar disorder was non-severe (Tr. 51) and "well controlled on medication" (Tr. 54-55).  The ALJ also relied on the opinion of a state agency reviewing psychological consultant, Dr. Vincent Gollogly, Ph.D., who found that claimant's mental impairment caused no restriction in activities of daily living, no difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation of extended duration (Tr. 18, 385, 395).

The ALJ failed to provide any analysis of the opinion regarding Ms. Winger's bipolar disorder by her main treating physician, Dr. Christopher Yarter, M.D.  Among other things, Dr. Yarter noted in his first visit with Ms. Winger in January of 2004 that she was spiraling downward with "worsening bipolar disorder" (Tr. 444). Although she responded to lithium treatment, he concluded that when she exceeded her volunteering

and trying to work four hours a day, it resulted in a worsening of her bipolar disorder (Tr. 444). Thus, the treating physician's opinion on this issue contradicts the opinion by the non-examining doctor, and also is contradicted by the ALJ's finding that Ms. Winger's bipolar disorder did not have more than a minimal effect on Ms. Winger's ability to conduct basic work activities. Not only should the opinion of a treating physician be given controlling weight when well supported and consistent with the objective medical evidence, but also, an ALJ must provide specific and legitimate reasons for any rejection of an opinion from an examining doctor in favor of an opinion of a non-examining, medical consultant. *See Edlund v. Massanari*, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (*citing* SSR 96-2p, 1996 SSR LEXIS 9); *Van Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester, supra*, 81 F.3d at 831).

The Court also notes that Ms. Winger's bipolar disorder, together with her other conditions, led Dr. Yarter to the conclusion that "[i]f she had attempted even sedentary work during that time, she would certainly suffer from multiple days of absenteeism, I suspect much greater than 3 or more per month . . . ." (Tr. 445). This finding also is contradicted by the ALJ's findings and her ultimate conclusion regarding Ms. Winger's disability status.

Although the ALJ provided some analysis regarding Dr. Yarter's conclusions about Ms. Winger's physical impairments, the ALJ made no mention of Dr. Yarter's conclusions regarding Ms. Winger's bi-polar disorder, which led in part to his conclusions regarding Ms. Winger's limitations.

1     The ALJ must provide "clear and convincing" reasons for rejecting the

2  uncontradicted opinion of either a treating or examining physician or psychologist.

3  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Baxter v. Sullivan*, 923 F.2d

4  1391, 1396 (9th Cir. 1991); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if

5  a treating or examining physician's opinion is contradicted, that opinion "can only be

6  rejected for specific and legitimate reasons that are supported by substantial evidence in

7  the record."  *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035,

8  1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and

9  thorough summary of the facts and conflicting clinical evidence, stating his interpretation

10  thereof, and making findings." *Reddick, supra*, 157 F.3d at 725 (*citing Magallanes v.*

11  *Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

12

13     Here, the ALJ's failure to provide any analysis of Dr. Yarter's conclusions

14  regarding Ms. Winger's mental disorder, when these conclusions were at odds with the

15  reviewing medical consultants' opinions, is a fatal flaw, requiring reversal.

16     Also, the ALJ claims to have relied on the opinion of an examining psychiatrist,

17  Dr. Ryan Coon, Psy.D., who did a diagnostic evaluation on February 5, 2009 (Tr. 18-19,

18  379-84).  The ALJ concluded that Dr. Coon opined that "claimant was coping effectively

19  with her bipolar symptoms" and that "[h]er ability to sustain concentration and persist at

20  activities appears to be intact . . ." (Tr. 19).  But Dr. Coon's report, which is cited by the

21  ALJ, makes it clear that Ms. Winger was coping effectively with her bipolar symptoms

22  only by limiting her activities (*see* Tr. 383-84). Although she was able to volunteer for 4

23  to 5 hours at a time, and quilt for an hour to an hour and a half a time (*id.*), these

24

1  limitations were not taken into consideration by the ALJ when reviewing Dr. Coon's

2  conclusions (Tr. 19, 20).  Also, Dr. Coon concluded, "therefore, if she attains new

3  employment and is up front about what she can and cannot do memory-wise and what

4  she can and cannot do related to her bipolar symptoms, there does not seem to be any

5  reason for significant conflict to occur to between her and future bosses" (Tr. 384).  The

6  ALJ's statement that Dr. Coon concluded that Ms. Winger "was coping effectively with

7  her bipolar symptoms" fails to take into consideration all of the above limitations and

8  therefore is unsupportable.

9          Instead of properly considering Ms. Winger's treating and examining physicians'

10  conclusions, the ALJ relied on the conclusions of state reviewing consultants' opinions to

11  support her findings.  But even these considerations were lacking.  An example of the

12  ALJ's inappropriate crediting of the opinions of state reviewing consultant, Dr. Johnson,

13  is Dr. Johnson's testimony that Ms. Winger did not suffer any severe mental impairment

14  for any twelve month period, noting that, supposedly, her last episode of mental

15  impairment was in 2007 and only lasted for three months (Tr. 18).  However, the record

16  reveals that on January 10, 2008, Ms. Winger was taken to the emergency room because

17  she was becoming increasingly manic (Tr. 340).  Her health care providers had to modify

18  her medications because of side effects and Dr. Sattar thought this might be the first signs

19  of hypomania (Tr. 339).  Also, Dr. Johnson's conclusion failed to consider a manic

20  episode reported by Dr. Yarter on October 29, 2008, who referred her for psychiatric

21  treatment with Dr. Javal, who modified her lithium treatment (Tr. 351).

1   It is unknown at this time whether Dr. Johnson was not given these records or

2   whether he failed to take these records into consideration in reaching his conclusions.  In

3   either event, the ALJ's reliance on Dr. Johnson's erroneous conclusion is problematic.

4   Here, the ALJ found a mental impairment but did not conduct a sufficient analysis

5   of the functional limitations caused by the impairment. Instead, the ALJ ignored the

6   opinions of her treating physician, Dr. Yarter, regarding the limitations caused by her

7   bipolar condition, and the ALJ mischaracterized the conclusions of her examining

8   physician, Dr. Coon, who made it clear that her bipolar condition resulted in functional

9   limitations. Instead, the ALJ relied entirely on reviewing consultants' conclusions, which

10  were, at least in part, based on faulty or incomplete information.

11

12  Therefore, the ALJ's reasoning does not constitute specific and legitimate reasons

13  for rejecting these opinions.  Since the standard for finding a "severe impairment" only

14  requires "a minimal effect on the individual's ability to work" *Smolen*, *supra*, 80 F.3d at

15  1290 (*quoting Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (*adopting* SSR 85-

16  28)) this failure to properly consider the opinions of a treating and examining physician is

17  reversible error.

18  Furthermore, this failure is not harmless because the ALJ failed to take any of

19  these limitations into consideration when determining Ms. Winger's RFC, on which the

20  ALJ's ultimate conclusion regarding disability was based.  Therefore, the Court

21  recommends that this case be reversed and remanded for reconsideration of Ms. Winger's

22  mental impairment.

23

24

*b.  Ms. Winger's severe physical impairments – right arm lymphadema, morbid obesity, and left knee arthritis.*

The ALJ found that Ms. Winger had the severe impairments of right arm lymphadema, morbid obesity, and left knee arthritis (Tr. 17).  Among other things, her main treating physician, Dr. Yarter, concluded that Ms. Winger had severe swelling in her right hand, which "limits her ability to do anything manually with her right hand." (Tr. 444-45.)  Despite this finding, the ALJ included no limitation whatsoever on Ms. Winger's use of her right upper extremity other than a limitation on lifting or carrying "20 pounds occasionally and 10 pounds frequently" (Tr. 20).  The ALJ rejected Dr. Yarter's treatment notes as "devoid of objective findings supporting that degree of limitation, and there is nothing in the longitudinal record to support such limitations" (Tr. 22).  Instead, he relied on the state agency's reviewing medical consultant, Dr. Brent Packer, M.D., who opined that claimant could perform light work with no further limitation regarding the use of her right hand (Tr. 22-23).

In general, more weight is given to a treating medical source's opinion than to the opinions of those who do not treat the claimant.  *Lester, supra*, 81 F.3d at 830 (*citing Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)).  On the other hand, an ALJ need not accept the opinion of a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings or by the record as a whole. *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004) (*citing Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  An examining physician's opinion is

1    "entitled to greater weight than the opinion of a nonexamining physician." *Lester, supra*,

2    81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. § 404.1527(d).  A non-examining

3    physician's or psychologist's opinion may not constitute substantial evidence by itself

4    sufficient to justify the rejection of an opinion by an examining physician or

5    psychologist. *Lester, supra*, 81 F.3d at 831 (citations omitted). However, "it may

6    constitute substantial evidence when it is consistent with other independent evidence in

7    the record." *Tonapetyan, supra*, 242 F.3d at 1149 (*citing Magallanes, supra*, 881 F.2d at

8    752).  "In order to discount the opinion of an examining physician in favor of the opinion

9    of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons

10    that are supported by substantial evidence in the record." *Van Nguyen v. Chater*, 100 F.3d

11    1462, 1466 (9th Cir. 1996) (*citing Lester, supra*, 81 F.3d at 831); *see also* 20 C.F.R. §

12    404.1527(d)(2)(i). .

13

14        Here, the ALJ provided little or no analysis regarding why she rejected Dr.

15    Yarter's opinion about Ms. Winger's functional limitations regarding use of her right

16    hand, other than the broad statement that "the overall record" does not support this degree

17    of limitation.  The ALJ must explain why her own interpretations, rather than those of the

18    doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d

19    418, 421-22 (9th Cir. 1988)). However, the ALJ "need not discuss *all* evidence

20    presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir.

21    1984) (per curiam).  The ALJ must only explain why "significant probative evidence has

22    been rejected."  *Id.* (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981)).

23

24

Dr. Yarter's conclusions included observations of swelling in her right arm, and Ms. Winger's inability to write anything other than "chicken scratch," neither of which was evaluated or taken into consideration by the ALJ in her final RFC (*see* Tr. 443, 20-22).

Regarding Ms. Winger's left knee pain, although the ALJ found that Ms. Winger suffered from severe arthritis of the left knee (Tr. 17), she again ignored Dr. Yarter's conclusion that she was not capable of standing from more than 10 minutes and could not sit for more than about an hour (Tr. 444-45). Instead, the ALJ credited the reviewing state agency consultant's opinion (*id.*).

On remand, the ALJ should reconsider the RFC in light of the above severe medical impairments and provide "specific and legitimate reasons" if she chooses to reject the treating physician's opinions in favor of the opinion by a reviewing medical consultant.

## 2. – 5. Ms. Winger's credibility, lay testimony, and the ALJ's Step 4 and 5 analysis.

A proper evaluation of the medical testimony is critical to every other determination affecting the remaining issues presented by plaintiff in this appeal. Therefore, the ALJ is instructed to reconsider Ms. Winger's credibility and testimony, lay opinion testimony, and Ms. Winger's RFC in light of this re-evaluation.

*Ms. Winger's credibility.* A determination of a claimant's credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). In addition, this Court already has determined that the ALJ failed to evaluate the medical evidence in this

case properly, *see supra*, section 1. Therefore, Ms. Winger's testimony and credibility must be evaluated anew following remand of this matter.

Regarding Ms. Winger's credibility, the Court notes that the ALJ relied heavily on Ms. Winger's activities of daily living when failing to credit fully her testimony and allegations (*see* Tr. 21, 23). However, the ALJ did not make a specific finding that these activities were transferable to a work setting and did not specify any other testimony by Ms. Winger that was contradicted by her activities of daily living.

The Ninth Circuit repeatedly has "asserted that the mere fact that a plaintiff has carried on certain daily activities . . . . does not in any way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (*quoting Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). The Ninth Circuit specified "the two grounds for using daily activities to form the basis of an adverse credibility determination: (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills." *Orn, supra*, 495 F.3d at 639 (*citing Fair, supra*, 885 F.2d at 603). As stated by the Ninth Circuit, the ALJ "must make 'specific findings relating to the daily activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination. *Orn, supra*, 495 F.3d at 639 (*quoting Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).

*Lay testimony*. The same holds true for the ALJ's consideration of lay testimony, which relies, in part, on the ALJ's faulty medical findings.  Plaintiff argues that the ALJ failed to credit fully the limitations referenced by Dan Winger, the claimant's husband.

1   Specifically, the ALJ failed to take into consideration manic episodes and physical

2   limitations regarding such things as lifting, standing, and walking (ECF No. 14, page 20;

3   Tr. 197-203). "[W]here the ALJ's error lies in a failure to properly discuss competent lay

4   testimony favorable to the claimant, a reviewing court cannot consider the error harmless

5   unless it can confidently conclude that no reasonable ALJ, when fully crediting the

6   testimony, could have reached a different disability determination." *Stout, supra*, 454

7   F.3d at 1056 (reviewing cases).  This is a very high standard.  Because the ALJ's

8   consideration of the medical testimony will require a re-evaluation of claimant's

9   limitations, the ALJ also should reconsider the lay testimony in light of this analysis.

10          *Steps 4 and 5*.  Because the ALJ will be required to re-evaluate the medical and

11  lay testimony, the ALJ also should reconsider her step four finding regarding Ms.

12  Winger's RFC and Ms. Winger's ability to perform her previous work and her

13  conclusions in the alternative regarding step five. Remand of this matter also will allow

14  the Commissioner to consider fully the new evidence plaintiff submitted to the Appeals

15  Council.

16

17

18                                    CONCLUSION

19          Based on these reasons, and the relevant record, the undersigned recommends that

20  this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. §

21  405(g) to the Commissioner for further consideration.  **JUDGMENT** should be for

22  **PLAINTIFF** and the case should be closed.

23

24

1          Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

2    fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R.

3    Civ. P. 6.  Failure to file objections will result in a waiver of those objections for

4    purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C).

5    Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the

6    matter for consideration on March 8, 2013, as noted in the caption.

7          Dated this 14th day of February, 2013.

8

9

10

11   _____

     J. Richard Creatura

12   United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 18